IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALID K. MACK,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 25-CV-2344<br>: |
| LAURA WILLIAMS, *et al.*<br>　　Defendants. | :<br>: |

**MEMORANDUM**

**HENRY, J.**                                                                                                      **NOVEMBER 5, 2025**

Plaintiff Khalid K. Mack, a pretrial detainee incarcerated at the George W. Hill Correctional Facility ("GWHCF"), filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations that staff was deliberately indifferent to his medical needs. For the following reasons, the Court will permit Mack to proceed at this time on his deliberate indifference to medical needs claim only and will dismiss all other claims. Mack will be granted the option of proceeding only on the claim that passes statutory screening or filing an amended complaint to attempt to correct the deficiencies noted by the Court in the claims that are dismissed.

**I.      FACTUAL ALLEGATIONS**[1]

Mack's allegations are brief. Mack alleges that since July 24, 2024, he's been denied "proper medical care" by staff at GWHCF. (Compl. at 5-6.) He asserts an Eighth Amendment claim against the following Defendants: (1) Laura Williams, identified in the Complaint as the

---

[1] The factual allegations set forth in this Memorandum are taken from Mack's Complaint. (ECF No. 2.) The Court adopts the pagination supplied by the CM/ECF docketing system. Grammar, spelling, and punctuation errors in quotes from Cottle's submissions are cleaned up where necessary.

Warden of GWHCF;[2] (2) Wellpath; (3) Kelly A. Mullan, identified as a "Medical PA;" (4) Nedd, identified as "C.I.D. Investigations;" and (5) Susan Sendall, identified as a Grievance Coordinator. (*Id.* at 2-4.) Warden Williams and Nedd are sued in their official capacities only while PA Mullan is sued in her official and individual capacities. (*Id.*)

Mack contends that despite being recommended for a fine needle aspiration of a thyroid nodule, PA Mullan "never scheduled an appointment." (*Id.* at 6.) He asserts that "Nedd from C.I.D. Investigations" told him that he had an appointment scheduled for the week of April 28, 2025. (*Id.*) Mack also alleges that a "mid level nurse" named Jeff called PA Mullan "sometime in December 2024" and PA Mullan "once again confirmed an appointment was made." (*Id.*) Mack alleges that he's "been neglected medically" and "Wellpath [has] failed to monitor [his] condition." (*Id.*) He contends that the nodule on his thyroid "has been growing" and he has yet to be diagnosed because he never received "a fine needle aspiration as recommended by Trident Care." (*Id.*) Based on the foregoing allegations, Mack seeks $1,000,000 in compensatory and punitive damages. (*Id.*)

Mack attaches medical records and grievance forms to his Complaint. (ECF No. 2-1.) A January 24, 2024, ultrasound report from Trident Care notes that a follow-up scan of a nodule appearing on the right side of the thyroid gland is recommended. (*Id.* at 1.) It appears from the medical records that a repeat thyroid ultrasound was ordered by PA Mullan and conducted on July 24, 2024. (*Id.* at 2.) The July 24, 2024, ultrasound report indicates that Mack's right lobe

---

[2] While Mack alleges that at the time of the events in question, Williams was the Warden of GWHCF, the position appears to be currently vacant. *See* https://delcopa.gov/prison/leadership-and-staff (last visited October 3, 2025).

thyroid nodule was mildly larger and suspicious for neoplasm,[3] and a fine-needle aspiration was recommended. (*Id.* at 2.) Also attached to the Complaint is a copy of a Step 1 Grievance Form, No. 24-09-011, indicating that it was submitted for decision on September 26, 2024. (ECF No. 2-1 at 3.) Mack indicates in the grievance that he "was supposed to go to [an] outside hospital" for an appointment at the end of August, but he was told that "Wellpath couldn't find a doctor." (*Id.*) In response to the grievance, Mack was informed that his "outside appointment is scheduled." (*Id.*) Also attached to the Complaint is a Step 2 Grievance Form, submitted on March 11, 2025, wherein Mack states that he has not yet been seen for an appointment. (*Id.* at 4.) Grievance Coordinator Sendall responded that while the grievance was filed "past the deadline," she sent copies of his grievances "to the Health Services Supervisor for review." (*Id.*) A Request for Information form dated March 27, 2025, is also attached as an exhibit. (*Id.* at 5-6.) In response to Mack's request that was directed to the Warden, Sendall again advised that while his Step 2 grievance was past the deadline for appeal, both of his grievances were sent to the "Health Service Supervisor for review." (*Id.* at 5-6.)

## II.   STANDARD OF REVIEW

Because Mack is proceeding *in forma pauperis* (*see* ECF No. 6), his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d

---

[3] According to the American Cancer Society website, a neoplasm is an abnormal growth of cells that occurs when the body's normal process of making and replacing cells doesn't work as it should. *See* American Cancer Society, https://www.cancer.org/cancer/understanding-cancer/what-is-cancer/neoplasms-and-tumors.html (last visited October 3, 2025).

3

Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court accepts the facts alleged in the *pro se* complaint as true, draws all reasonable inferences in the plaintiff's favor, and considers whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mack is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Mack brings this civil action pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construing the allegations of the Complaint, it appears that Mack contends that the staff at GWHCF were deliberately indifferent to his serious medical needs by denying him recommended treatment. As it appears that Mack was confined as a pretrial detainee at the time of the events in question, the Fourteenth Amendment, rather than the Eighth Amendment, governs his claims.[4]

---

[4] Mack asserts in his Complaint that he was a pretrial detainee at the time of the events in question. (Compl. at 5.) A review of public records demonstrates that Mack has since pled guilty to the charges of possession of a firearm and driving under the influence of a controlled

4

### A.    Lack of Personal Involvement

Mack names the following GWHCF employees as Defendants: Warden Williams, Susan Sendall, a grievance coordinator, and Nedd from "C.I.D. investigations." (Compl. at 2-4.) There are no allegations anywhere in the Complaint about how Warden Williams or Sendall were involved in the incidents Mack describes. With respect to Nedd, the only factual allegation is that Nedd spoke with Mack, telling him that an appointment was scheduled for the week of April 28, 2025. (*Id.* at 6.) This allegation is insufficient to allege how Nedd was personally involved in causing Mack to suffer a constitutional injury.

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Mack's claims against Defendants Williams, Sendall, and Nedd will be dismissed without prejudice.

Moreover, to the extent Mack asserts claims against Williams because she was the

---

substance. *See Commonwealth v. Mack*, CP-23-CR-0001786-2024 (C.P. Delaware). According to an inmate search conducted on the Pennsylvania Department of Corrections' website, Mack is currently incarcerated at SCI Camp Hill. The Court will screen Mack's Complaint accepting that he was a pretrial detainee at GWHCF when the events occurred.

Warden at GWHCF, those claims are not plausible. "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*). Because Mack does not allege any facts from which the Court can infer that Williams is liable for any constitutional injuries, his claims against her are not plausible.

Finally, to the extent that Mack names Sendall based on her role as the grievance coordinator for GWHCF, any such claims are not plausible. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree

6

with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### B. Claims Against Wellpath

Mack asserts an official capacity claim against Wellpath, a private company providing medical services to inmates at GWHCF. (Compl. at 2, 6.) A private corporation like Wellpath that is under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) to claims against medical contractor)). Rather, to hold a prison medical provider like Wellpath liable for a constitutional violation under § 1983, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).[5]

---

[5] "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of*

7

"To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). Allegations that simply paraphrase these standards are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases); *see also Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

Mack has not tied his allegations of deliberate indifference to a custom or policy of Wellpath. In fact, he has not referenced any policy or custom by Wellpath in his Complaint.

---

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019). Mack has not alleged that he was injured due to a failure to supervise, train, or discipline.

Accordingly, the allegations are insufficient to allege a plausible claim against Wellpath.[6] *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)).

### C. Official Capacity Claims Against Kelly Mullan

Mack asserts both official and individual capacity claims against Kelly Mullan, a Physician Assistant at GWHCF. (Compl. at 3.) To the extent Mack intended to pursue claims against PA Mullan in her official capacity, this claim fails. Claims against municipal and county officials named in their official capacity are indistinguishable from claims against the entity that employs them, here Delaware County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* As with his claim against Wellpath, nothing in the Complaint alleges that the conduct of which Mack complains was the result of a county policy or

---

[6] While the claim against Wellpath will be dismissed without prejudice, the Court notes that any liability against Wellpath in this Court is uncertain in light Wellpath's discharge from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for claims that arose prior to November 11, 2024. *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.) (Bankr. Doc. Nos. 2596, 2679, 2680) ); *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

custom. Accordingly, he has failed to articulate a plausible municipal liability claim against Delaware County.

        **D.**        **Medical Deliberate Indifference Claims**

All that remains is Mack's individual capacity claim against PA Mullan based on her alleged failure to follow up with recommended treatment. To state a Fourteenth Amendment claim based on the failure to provide medical care, which is what Mack alleges here, a pretrial detainee must allege facts reflecting that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In the context of correctional medical care, deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). At the screening stage, Mack's allegation that he has been denied a recommended

follow-up appointment for a fine needle aspiration for at least nine months raises a plausible inference that PA Mullen was deliberately indifferent to a serious medical need. *See generally Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (deliberate indifference can be found where prison officials "prevent an inmate from receiving recommended treatment for serious medical needs" ).

### IV.    CONCLUSION

As set forth more fully above, Mack's claim of deliberate indifference to his medical needs against PA Mullan will proceed.  However, Mack's official capacity claims and his claims against Warden Williams, Wellpath, Nedd, and Susan Sendall will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Considering Mack's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects in those claims.  In the alternative, Mack may advise the Court that he seeks to proceed only on the claim against PA Mullan.  An appropriate Order follows.